Filed 1/6/17  Certified for publication as modified 2/1/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B271027 |
| --- | --- |
| | (Los Angeles County Super. Ct. No. DK13214) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.T. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anabelle G. Cortez, Judge.  Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant A.T.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant J.R.

Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

Mother A.T. (Mother) and father Joshua R. (Father) are the parents of a daughter, M.R., and a son, J.R. At the time of the events relevant to this appeal, the children were four years old and 21 months old, respectively. The Department of Children and Family Services (Department) filed a dependency petition seeking juvenile court jurisdiction over both children after learning Mother had been arrested for driving under the influence of alcohol with her two children in the car. The parents contend this was a one-time incident that is insufficient to support the juvenile court's finding that their children were at substantial risk of suffering serious physical harm, as described by Welfare and Institutions Code section 300, subdivision (b)(1).[1] We consider whether there was substantial evidence to support the juvenile court's jurisdictional finding.

## I. BACKGROUND

### A. *Mother's Arrest for Driving Under the Influence and Initial Department Investigation*

At about 2:30 a.m. on July 27, 2015, a California Highway Patrol (CHP) officer observed Mother driving 83 miles per hour on Highway 60. The officer initiated a traffic stop, and after approaching the vehicle, noticed M.R. sleeping across two seats in the backseat of the car unrestrained by a seat belt. J.R. was seated in a car seat, but only the top clips were attached and the bottom belt was unsecured. Smelling a strong odor of alcohol emanating from the vehicle, the officer asked Mother to exit the

---

[1]     Statutory references that follow are to the Welfare and Institutions Code.

3

car.  When Mother did so, "she was unsteady on her feet and had to lean against [her car] to maintain her balance."

The CHP officer asked Mother if she had consumed any alcoholic beverages and Mother initially said "no."  After the officer told Mother he could smell the odor of alcohol, she admitted she had "one drink earlier in the evening," and later during the encounter, she told the officer she had two Blue Moon beers at her grandparents' house.  When the officer asked Mother to perform certain field sobriety tests, she failed to perform adequately in several respects.  Breath tests administered by the officer revealed Mother's blood alcohol content was .14 percent.  The officer arrested Mother for driving under the influence of alcohol and released the children to Father.

About a week later, the arresting officer notified the Department of Mother's arrest.  Department social workers thereafter interviewed Mother and Father and further investigated the family's history and the children's welfare.[2]

According to the first Department report prepared after Mother's arrest, Mother told a social worker the arrest had been "an honest mistake."  Mother said she had been drinking because her grandfather had recently passed away; she said she and Father were at her mother's house first for a family gathering and they then went to a friend's house where they started drinking.  Mother stated she recognized her mistake and denied having a habit of drinking or getting drunk.  In regards to the children being unrestrained (or improperly restrained) in car

---

[2]     Mother, who had just turned 21, and Father, who was 24, had been in a relationship for approximately four years at the time of the drunk driving incident.  He was employed as a painter.  She stayed home with the children.

4

seats on the night she was arrested, Mother claimed the children often unbuckle their own car seat belts. In this first interview, Mother told the social worker she would cooperate fully with the Department and in receiving services to avoid getting her children removed from her care.

The same Department report also recounted Father's interview statements. He "denied any abuse or neglect to the children and denied any domestic violence, substance abuse, or mental health issues." Father admitted he and Mother were drinking on the night of the arrest, and he said he let Mother drive because he thought Mother drank less than he did. Father likewise said he and Mother would cooperate with the Department so they would not lose their children.

In investigating the parents' history, the Department obtained a Los Angeles County Sheriff's Department incident report detailing an altercation between the parents less than four years earlier, in January 2012. As summarized by the Department (and in some contrast to Father's interview statement), the incident report stated "the parents had an argument and father hit mother twice in the face with a closed fist. [A]lcohol was involved during this incident and that the parents were at a friends' house when the incident happened. At the time of the incident[, M.R.] was seven months old, but a DCFS referral was not called in."

B.    *Initiation of Proceedings in the Juvenile Court, and Further Department Investigation*

On September 4, 2015, the Department filed a "non-detained" petition alleging the juvenile court had jurisdiction of the children under section 300, subdivision (b)(1). Count b-1 of

5

the petition alleged: "On 07/27/2015, the children, [M.R.] and [J.R.'s] mother . . . placed the children in a detrimental and endangering situation by driving a vehicle in excess of eighty miles per hour, while under the influence of alcohol, while the children were passengers in the vehicle. The children's father . . . failed to protect the children when the father knew of the mother's alcohol intake and allowed the mother to drive the children while under the influence of alcohol . . . . Such a detrimental and endangering situation established for the children by the mother and the father's failure to protect the children endanger the children's physical health and safety and place the children at risk of serious physical harm, damage, danger, and failure to protect."[3]

At the initial hearing on the petition, the juvenile court found there had been a prima facie showing the children were persons described by section 300, subdivision (b). The court ordered the children released to their parents, ordered random drug and alcohol testing for Mother and Father, and ordered the Department to refer Mother to an alcohol program.

In preparation for the scheduled jurisdiction and disposition hearing, the Department prepared another report that included, among other things, summaries of further interviews conducted with Mother and Father concerning the driving under the influence incident and the children's welfare. Mother told the interviewing Department investigator that she "had a couple of beers" but she maintained she "wasn't drunk."

---

[3]     A second count (b-2) alleged the parents placed the children in a detrimental and endangering situation by failing to properly secure them in age-appropriate child restraint seats.

Father similarly told the Department investigator that Mother had "one or two beers" and "was not drunk." Both parents also claimed Department involvement with the family was unwarranted; Mother said, "I don't feel we need a case with [the Department]," and Father stated, "We really don't need services from [the Department]," adding "[Mother] doesn't have a drinking problem." Mother continued to deny any history of domestic violence when asked, but Father admitted there had been an incident involving Mother a couple years prior (i.e., the January 2012 incident reflected in the sheriff's department incident report).

According to the jurisdiction and disposition report, Mother had tested negative for use of drugs or alcohol on three occasions since the initial juvenile court hearing. Father had also tested negative twice. Mother and Father told the Department investigator they had not consumed any alcohol since the night of Mother's arrest.

The jurisdiction and disposition report concluded with a summary of the Department's concerns about Mother and Father and their ability to look after the children's welfare. Noting Mother's .14 percent blood alcohol reading and her poor performance on field sobriety tests, the Department believed "[t]he parents have not been forthcoming in regards to the fact that the mother had excessively consumed a significant amount of alcohol on 7/27/15 and then operated a vehicle placing her life and that of the father and the children in grave danger." The report also referenced the January 2012 incident of domestic violence that occurred while the parents had been drinking. The Department accordingly stated it had "concerns about the parent's alcohol usage, lack of judgment and not ensuring that

7

the children were safely secured in car seats prior to operating their vehicle."

The Department submitted two last minute information reports before the jurisdiction and disposition hearing. The first informed the court that Mother had been convicted of a misdemeanor violation of Vehicle Code section 23152, subdivision (b) (driving with a blood alcohol content over .08 percent) and sentenced to three years' summary probation. The criminal court ordered Mother to complete a 3-month first offender alcohol and drug education counseling program. The second report recounted Mother's statement that she had completed three parenting classes and was "planning on enrolling" in substance abuse and individual counseling at Downey Calvary Chapel. The Department continued to recommend that the juvenile court order Mother to complete, among other classes, a Department-approved alcohol counseling program.

### C. *The Jurisdiction and Disposition Hearing*

The parties appeared for a combined jurisdictional and dispositional hearing in January 2016. The juvenile court received into evidence the various Department reports we have discussed. Neither parent offered any evidence on the jurisdictional issues and no witnesses testified.

The Department argued the juvenile court should sustain the petition in full as pled. Counsel for the children, M.R. and J.R., asked the court to sustain count b-1 of the petition (alleging the drunk driving incident) and to dismiss count b-2 of the petition (concerning the alleged failure to secure the children in age-appropriate car seats). The attorneys for the parents argued the juvenile court should dismiss the petition in its entirety,

8

arguing there was no current risk to the children and Mother's drunk driving was a one-time incident akin to the facts at issue in *In re J.N.* (2010) 181 Cal.App.4th 1010 (*J.N.*). Mother's attorney emphasized that Mother's criminal case associated with the drunk driving incident had been resolved, but Mother's attorney did concede Mother had not started any programs ordered in the criminal case "due to finances."

The juvenile court found count b-1 proven (with amendments to reflect Mother's conviction, instead of a mere arrest) and dismissed count b-2. The court explained its ruling as follows: "The court would adopt by reference the facts noted by [the Department and counsel for the children] as it relates to (b)(1). I totally agree that the parents are minimizing the incident in the report. They have not started any programs to address the underlying issue, at least . . . there's nothing in the evidence that indicates that they have started programs. [¶] The court would also note that I would respectfully disagree that as severe as it may be, as it was noted by counsel, that there is no risk to the children, the court would note case law that a one-time incident if severe enough and serious enough can be a basis for the court to assume jurisdiction. The court need not wait until the children are actually harmed to protect the children as that's the purpose of dependency court. [¶] . . . [¶] [T]he reports do talk about Mother's blood and alcohol level and Mother stumbling out of the car after she was stopped speeding while the kids were in the backseat and present during this incident."

Proceeding to disposition, the juvenile court stated its tentative ruling was to proceed under section 360, subdivision (b), namely to refrain from adjudicating the children dependents of the court and to order services provided for six months under the

9

supervision of the Department to keep the family together.  After hearing from counsel, and noting the Department's objection to the tentative ruling, that was the final order of the court.

## II.  DISCUSSION

Relying heavily on comparisons to *J.N.*, *supra*, 181 Cal.App.4th 1010, Mother and Father argue the court's jurisdictional finding is infirm because the drunk driving incident was a one-time episode and there was no substantial evidence of an ongoing substantial risk of harm to their children at the time of the jurisdiction hearing.[4]  We see the record quite differently.  Mother and Father not only seriously jeopardized the physical safety of their children on the night Mother drove while intoxicated, they continued to minimize the seriousness of the incident during the dependency proceedings and had not, at the time of the jurisdiction hearing, taken any significant steps to participate in educational programs concerning the problematic use of alcohol that gave rise to the substantial risk to the children's safety.  Thus, in our judgment, the juvenile court's finding that count b-1 of the petition was true is supported by sufficient evidence.

### A.     *Standard of Review: Substantial Evidence*

We review the juvenile court's findings and orders to determine whether they are supported by substantial evidence.

---

[4]     The parents treat the juvenile court's section 360, subdivision (b) order as an appealable dispositional order, permitting review of the court's true finding of jurisdiction.  (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260-1261.)  DCFS does not contend otherwise.

(*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433 (*J.K.*); see also *In re Angelia P.* (1981) 28 Cal.3d 908, 924 [appellate court reviews the whole record to determine whether it discloses substantial evidence, that is, evidence that is reasonable, credible, and of solid value].)

Mother and Father, as the parties challenging the juvenile court's findings and orders, bear the burden to show there was no evidence of a sufficiently substantial nature to support those findings and orders. (*In re D.C.* (2015) 243 Cal.App.4th 41, 52.) We draw all reasonable inferences from the evidence to support the findings and orders of the juvenile court and review the record in the light most favorable to the court's determinations; we do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the trial court's findings. (*Id.* at pp. 51-52.) Thus, we do not consider whether there is evidence from which the juvenile court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw. (*In re F.S.* (2016) 243 Cal.App.4th 799, 813.)

B.      *Substantial Evidence Supports the Juvenile Court's Jurisdiction Finding*

In the *J.N.* case cited by the parents, a father of three children driving under the influence of alcohol crashed into a light pole with his wife (also intoxicated) and children in the car. (*J.N., supra*, 181 Cal.App.4th at p. 1014.) The *J.N.* court held jurisdiction under section 300, subdivision (b) will not lie where all that is at issue is a single past incident resulting in physical harm; instead, there must be "some reason to believe" there is a "current" or future risk to a child. (*Id.* at p. 1023.) The *J.N.* court

11

identified factors courts should consider when evaluating whether such an ongoing risk of serious harm exists, namely, the nature of the past conduct and "the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident." (*Id.* at pp. 1025-1026.)

Evaluating these considerations, the *J.N.* court believed that "[d]espite the profound seriousness of the parents' endangering conduct on the one occasion in this case, there was no evidence from which to infer there is a substantial risk [their] behavior will recur." (*J.N.*, *supra*, 181 Cal.App.4th at p. 1026.) The court pointed to the absence of evidence that the parents' parenting skills and general judgment were "so materially deficient that [they are] unable 'to adequately supervise or protect' the children" and emphasized "both parents were remorseful, loving, and . . . willing to learn from their mistakes." (*Ibid.*)

We assume for purposes of our analysis that *J.N.* is correct in holding a continuing or future risk to a child, rather than only a past incident of parental neglect, is necessary to sustain a jurisdictional allegation. (Contra, *J.K.*, *supra*, 174 Cal.App.4th at p. 1435; see also *In re Ethan C.* (2012) 54 Cal.4th 610, 636 [acknowledging the holding in *J.N.* is contrary to suggestions in *J.K.*].) But even proceeding on this assumption, *J.N.* does not support reversal in this case.

Analogous to *J.N.*, the incident that led to the filing of a dependency petition in this case was quite serious: Mother—while intoxicated—was driving over 80 miles per hour while her children were not properly restrained by seat belts in the car. But unlike *J.N.*, the parents' minimization of Mother's conduct (maintaining she had consumed just one or two beers despite evidence of significant intoxication) did call into question their general judgment. (Compare *J.N.*, *supra*, 181 Cal.App.4th at pp. 1017-1018 [the father admitted consuming nine beers with mother and the mother conceded "[s]he had been drinking beers like she was drinking soda"]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Exacerbating matters was the fact that the parents' acceptance of responsibility seemed to worsen, rather than improve, as dependency proceedings progressed: they were significantly more accepting of the wrongfulness of Mother's conduct and open to Department intervention in their first interview as compared to their interview before the jurisdiction hearing—when both parents denied Mother was drunk and stated they saw no need for Department involvement.[5] In

---

[5]     Mother suggests she might have been reticent to candidly discuss the facts of her alcohol consumption on the night of the incident while criminal charges were pending. This is not a persuasive argument. Had Mother told the Department she declined to discuss her alcohol use until the criminal case was resolved, we would not fault her for doing so. Of course, that is not what Mother did—she (and Father, who was not facing charges) instead made statements that appeared to significantly minimize her alcohol usage. Moreover, nothing prevented Mother from testifying at the jurisdictional hearing, once the criminal case had resolved, to explain her statements to

addition, and although it is true Mother was subject to criminal court supervision, it is equally true that at the time of the jurisdictional hearing Mother had not yet participated in any alcohol education programs nor did she proffer a date certain on which her participation would begin. Finally, there was also evidence that Mother and Father had engaged in an alcohol-related episode of domestic violence in the past, and while this was not evidence proving the parents had an ongoing substance abuse problem, it was further reason why the court could justifiably conclude there remained a risk to the children if and when the parents' alcohol use resumed such that informal supervision was warranted to help mitigate that risk.[6]

We believe the juvenile court carefully calibrated its jurisdicitonal findings and dispositional order to the facts before it. Substantial evidence supports the juvenile court's determinations.

---

Department investigators during previous interviews. Again, Mother did not do so.

[6] Notably, the probationary sentence Mother received in her criminal case would not result in any supervision of Father, who failed to protect M.R. and J.R. when he permitted Mother to drive while intoxicated. And unlike the juvenile court, the criminal courts' primary focus was on Mother, not the children.

DISPOSITION

The orders of the juvenile court are affirmed.


BAKER, J.


We concur:


TURNER, P.J.


KUMAR, J.*


---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/1/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B271027 |
| | (Los Angeles County Super. Ct. No. DK13214) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.T. et al.,<br><br>Defendants and Appellants. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

It is ordered that the opinion filed on January 6, 2017, be modified as follows:

On page 5, "[A]lcohol was involved during this incident and that the parents were at a friends' house when the incident happened" is deleted. Substituted in its place is "[A]lcohol was involved during this incident and . . . the parents were at a friend's house when the incident happened."

On page 7, in the final line, "[parents']" is substituted for "parent's".

On page 14, in footnote 6, "courts'" is deleted and "court's" is substituted in its place.

So modified, and good cause appearing, it is ordered that the opinion be published in the official reports.

There is no change in judgment.

_____

BAKER, J.              TURNER, P.J.              KUMAR, J.[*]

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2