Filed 9/30/20  In re Ad.C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Ad.C., a Person Coming Under the Juvenile Court Law. | B304326 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00817) |
| Plaintiff and Respondent, | |
| v. | |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant A.C.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

The Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition seeking juvenile court jurisdiction over Ad.C., the son of E.S. (Mother), not a party to this appeal, and A.C. (Father), after learning Father had been convicted of felony child endangerment for driving while severely intoxicated with then two-year-old Ad.C. in the car. Father contends this was a one-time incident that is insufficient to support the juvenile court's finding that Ad.C. would be at risk of serious physical harm, as described by Welfare and Institutions Code[1] section 300, subdivision (b)(1), were he to remain in Father's care. As of the date of the jurisdictional hearing, Father had been participating in all services required by the criminal court, was compliant with all DCFS requests and requirements, and recognized he had made a "stupid mistake." Father continued to maintain, however, that on the night in question, he drank only four to five beers over the course of the entire afternoon, a claim incompatible with the fact that his blood-alcohol content (BAC) percentage late that same evening was 0.19—more than twice the legal limit.

We consider whether substantial evidence supports the juvenile court's order sustaining the petition. For the reasons set forth below, we conclude that it does. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Family Background*

Mother and Father have been together for approximately six years. Mother, Father, and their son Ad.C. (born in February 2017) live together in the home of Ad.C.'s paternal grandparents and paternal uncles. Mother cares for Ad.C. full time, and Father

---

[1] Subsequent statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

works in construction to provide for the family.  The family has no DCFS history prior to the current proceedings.

### B.    *Incident Triggering DCFS Involvement*

The family came to the attention of DCFS when Father was arrested on September 2, 2019 while driving back from a rodeo he attended with his cousin and then two-year-old Ad.C. Around 1:00 a.m. that night, police observed Father's vehicle swerving into the lane for opposing traffic at 45 miles per hour with a flat front tire, the rim of the tire and the exhaust pipe both dragging on the ground and emitting sparks.  When the police stopped Father's vehicle, they found Father in the driver's seat, Father's cousin in the passenger seat, and Ad.C. in his car seat crying.  Both Father and his cousin appeared to be intoxicated. Father smelled of alcohol, had slurred speech, red eyes, could not follow simple directions, and could not stand up straight without assistance.  Police also observed three open containers of alcohol on the floorboards in the front seat.  Father denied being intoxicated, refused a field sobriety test, and stated he was not aware his vehicle had a flat tire.  The police report notes that the fresh damage to Father's vehicle was consistent with a traffic collision.

After Father was taken into custody later that night, law enforcement determined his BAC to be 0.19, over twice the legal limit of 0.08.  The police alerted DCFS, contacted Mother, and released Ad.C. to Mother's care.

Approximately a week after Father's arrest, a social worker interviewed both parents.  Mother denied Father had ever driven under the influence with Ad.C., and reported that he drank alcohol only socially.  Father likewise reported he drank alcohol only socially, and denied having an alcohol problem.  He acknowledged

3

drinking a total of four to five beers at the rodeo, and denied feeling intoxicated when he chose to drive home that night.

As a result of the drunk driving incident, Father was convicted on October 8, 2019 of misdemeanor driving under the influence (DUI) and felony child endangerment. Father was sentenced to four years of probation. As a part of his sentence, he was required to: complete a three-month, licensed first-offender alcohol and drug education and counseling program; complete a one year parenting program; abstain from alcohol; complete the hospital and morgue program; and complete the victim impact program of Mothers Against Drunk Driving (MADD).[2] Father was initially required to wear an alcohol monitoring bracelet as well, but the criminal court permitted him to remove it around October 28, 2019.

### C. *Section 300 Petition and Assessment of Voluntary Supervision Option*

On November 13, 2019, DCFS filed a section 300 petition alleging Ad.C. was at risk of suffering serious physical harm as a result of Father's drunk driving incident.[3] The juvenile court found

---

[2] The court further ordered Father to complete a 52-week domestic violence treatment program, apparently in error, which was ultimately suspended.

[3] Specifically, the petition alleged a single basis for jurisdiction under section 300, subdivision (b) as follows: "On 09/02/2019, . . . [Ad.C.'s] father, [A.C.,] placed the child in a detrimental and endangering situation by driving a vehicle while under the influence of alcohol while the child was a passenger in the vehicle. On 09/02/2019, the father was arrested for [d]riving under the [i]nfluence of [a]lcohol with a BAC of 0.19. Such a detrimental and endangering situation established by the father endangers the child's physical health and safety and creates a

4

a prima facie case for the petition and permitted Ad.C. to remain released to his parents on the condition that Father comply with the services ordered by the criminal court.  The court further directed DCFS to assess the possibility of a "[section] 301 contract"—a voluntary agreement between DCFS and the parents that they participate in services for a limited period of time in lieu of continuing dependency jurisdiction.[4]  (See § 301.)

DCFS ultimately advised the court it was not in agreement with a section 301 contract, citing the substantial risk created by the events described in the petition and Ad.C.'s being "of a young and vulnerable age" and "requir[ing] constant supervision and care."

### D.    *Jurisdiction Report*

In advance of the adjudication hearing, DCFS reported that Father's criminal history included only one conviction aside from those associated with the drunk driving incident underlying the petition: a conviction for selling alcohol to an underage person in the summer of 2018.  Father explained that this conviction resulted

---

detrimental home environment, placing the child at risk of serious physical harm, damage, danger and death."

[4] Section 301 provides in pertinent part that when DCFS "determines that a child is within the jurisdiction of the juvenile court . . . the social worker may, . . . subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child" with the goal of "ameliorat[ing] the situation that brings the child within . . . the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services pursuant to Sections 16506 and 16507.3, within the time periods specified in those sections." (§ 301; see also § 16507.3 [limiting time frame for voluntary family maintenance services to six months in most cases].)

from his working at a liquor store and having not paid sufficient attention when checking an underage customer's identification. Father initially entered a conditional plea, under which the case was to be dismissed if Father performed 50 hours of community service and obeyed all laws; if he failed to do so, the court would impose a sentence of 24 months probation and a fine. In February 2019, the criminal court sentenced him to 24 months of probation and a fine, suggesting Father did not complete his community service.[5]

The jurisdiction report reflected that Father was compliant with the service requirements associated with his drunk driving conviction. He had completed the MADD victim impact program, was participating in the parenting class and alcohol program, and was enrolled to participate in the Hospital and Morgue program starting at the next available date. Father reported having found many of these services helpful. Father said he learned from the MADD program how a bad decision can change lives and hurt innocent people, and how this had happened to his family as a result of his choices. He stated that the parenting class was helpful for learning how to talk to children. He did not comment on the alcohol program, which consisted of six classes spread over three months, three of which he had attended so far.

Father said he would comply with any DCFS services ordered and would agree to DCFS making unannounced visits to his home and submit to drug and alcohol testing. The record reflects that Father has been tested for drugs and alcohol twice since the incident, each time with negative results.

---

[5] That probation was terminated as a result of the convictions and sentence related to the September 2019 incident.

6

DCFS reported that Father continued to claim he drank "[f]our or five" beers "early on in the afternoon" at the rodeo, after which he ate food. He stated that he could not remember when he drank his last beer, but that "it wasn't late." Father stated that he felt he "was good to drive" the night of the rodeo, but "that was my mistake obviously." Father further denied having ever drunk excessively (other than on the night in question) and stated he currently did not drink at all. He acknowledged he had "made a stupid mistake like I did when I was a teenager when I was young," and recognized the negative consequences that choice had had on his family. Father denied he had been driving on a flat tire, stating instead that his tire popped just before the police pulled him over.

The report also described a social worker's visit with Mother and Ad.C. on December 6, 2019. The worker examined Ad.C., who appeared to be healthy and bonded with Mother, showing no signs of injury or abuse. The social worker reported no safety concerns regarding the family home.

DCFS recommended that the juvenile court sustain the petition, order the parents to participate in voluntary family maintenance services pursuant to section 360, subdivision (b), and terminate the dependency proceedings. (See § 360, subd. (b) ["If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."].)

DCFS recommended these services include, in addition to Father's criminal court-ordered programs, an outpatient alcohol program, an Alcoholics Anonymous 12-step group, drug and alcohol testing, and "[p]arenting [e]ducation."

### E. *Adjudication and Disposition Hearing*

At the adjudication portion of the January 13, 2020 hearing, the court sustained the petition as written, and expressly found Mother to be non-offending.

At the disposition portion of the hearing, the court considered DCFS's recommendation to proceed with voluntary services under section 360, subdivision (b). The court acknowledged Father "ha[d] taken responsibility for his actions and . . . ha[d] been participating in services" ordered in criminal proceedings. "[B]ecause of the progress of the father and [because] the mother is non-offending," the court found informal services, as opposed to continuing dependency proceedings, were appropriate. The court understood DCFS's recommendation as "recogniz[ing] how well the father ha[d] done" and seeking to supervise him "as an incentive to continue . . . in these programs." The court noted that "[t]here is a substantial risk. Especially if the father does not complete these programs. That's what will make it a substantial risk." The court therefore agreed that it was necessary for DCFS to "keep an eye on [Father] and . . . make sure that he does complete the programs," and found "[p]ursuant to [section] 360[, subdivision] (b)" that "[Ad.C.] is a person described under [section] 300" and ordered Ad.C., Mother, and Father "placed under the supervision of [DCFS] for a time period consistent with . . . section 301." The court further ordered DCFS to "provide services to the family to help the family remain together."

Father filed a timely notice of appeal from the court's "[January 13, 2020] jurisdictional findings and all other orders of the court."

8

**DISCUSSION**

Father argues substantial evidence does not support the juvenile court's order sustaining the petition, and that we should therefore reverse both that order and the dispositional[6] order requiring DCFS supervision under section 360, subdivision (b). (See *In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [jurisdictional findings reviewed for substantial evidence].) Specifically, Father argues that the petition was based on an isolated drunk driving incident which, although serious, is alone insufficient to establish a significant risk of harm to Ad.C. According to Father, the evidence suggests neither that Father had an ongoing substance abuse problem, nor any other facts making it likely Father would repeat his "stupid mistake." We disagree.

In order to sustain a petition under section 300, a significant risk to the child must exist " 'at the time of the jurisdiction hearing. . . .' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 829, quoting *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; see *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 ["the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm"].) Although the juvenile court may base a finding of such risk on a parent's harmful conduct in the past, there must be some non-speculative basis for concluding that such past conduct is likely to continue in the future. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1135 [if the "incident [of parental misconduct] was not likely to recur, then the petition failed to allege facts to demonstrate present or future risk of physical harm"]; *In re Ricardo L.* (2003)

---

[6] Section 360, subdivision (b) orders for informal supervision are construed as dispositional orders. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260.)

9

109 Cal.App.4th 552, 565 ["[P]revious acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur"].) Even "a single episode of endangering conduct" may support a current risk, if the totality of the evidence suggests the incident is likely to reoccur. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025; see, e.g., *In re M.R.* (2017) 8 Cal.App.5th 101, 107 [single drunk driving incident sufficient for jurisdictional finding].) In determining whether this is the case, "a juvenile court should consider the nature of the [past] conduct and all surrounding circumstances," as well as "evidence of the parent's current understanding of and attitude toward the past conduct . . . or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident." (*In re J.N., supra*, 181 Cal.App.5th at pp. 1025–1026.)

Two cases are particularly instructive here, as they both involve jurisdictional allegations based on a single instance of drunk driving:  *In re J.N., supra*, 181 Cal.App.4th 1010 and *In re M.R., supra,* 8 Cal.App.5th 101.  *In re J.N.* involved a father who drove with a BAC of 0.20, collided with another car, and ultimately crashed into a light pole, all with his three children—ages four years, eight years, and 14 months—in the car. (*In re J.N., supra*, 181 Cal.App.4th at pp. 1014–1016.)  The mother was in the car as well and had a BAC of 0.11.  (*Id.* at p. 1017.)  One of the children had unfastened her car seat, and was propelled out of her seat during the collision, sustaining injuries to her head that required stitches.  (*Id.* at pp. 1016–1017.)  The father attempted to flee the scene of the collision with one of the children, and both

10

parents were aggressive and uncooperative with police that evening.  (*Id.* at pp. 1015–1016.)  As a result of the incident, the father was charged with child endangerment and several other criminal violations.  (*Id.* at p. 1019 & fn. 7.)  The eldest child told social workers that both parents very rarely drank (*id.* at p. 1017), and both the father and the mother denied having any substance abuse problems.  (*Id.* at p. 1020.)  Both parents acknowledged, however, that they had drunk to excess on the night of the accident: The mother told DCFS that "[s]he could not remember how much beer she drank that night but acknowledged that she had been drinking beer like she was drinking soda" (*id.* at pp. 1017–1018), and the father "admitted that, on the night of the accident, [the] mother and [the father] had about nine beers during dinner." (*Id.* at p. 1018)  The father "recognized that he had made 'a bad decision to drive,' which he regret[ted]" and "appeared cooperative and remorseful."  (*Ibid.*)

On these facts, the Court of Appeal concluded that, "[d]espite the profound seriousness of the parents' endangering conduct . . . there was no evidence from which to infer there is a substantial risk such behavior will recur."  (*In re J.N., supra*, 181 Cal.App.4th at p. 1026.)  In reaching this conclusion, the appellate court noted the lack of evidence suggesting that the mother or the father had a substance abuse problem, and the lack of any other non-speculative basis on which to conclude that the parents' judgment or parenting skills were so deficient that either was unable to adequately supervise and protect the children.  (*Ibid.*)  The court acknowledged "a valid concern that . . . [the] mother seemed to minimize her and her husband's alcohol use and the ramifications of alcohol use," but found this to be an insufficient basis for the jurisdictional findings, given that "the criminal court had ordered [the] mother to complete substance abuse and parenting programs and placed her under

11

probation supervision[,] and [s]ignificantly, both parents were remorseful, loving, and indicated that they were willing to learn from their mistakes." (*Ibid.*)

*In re M.R.* involved a mother convicted of driving under the influence after she was caught driving 83 miles per hour with a BAC of 0.14 and her four-year-old and 21-month-old children in the car. (*In re M.R.*, *supra,* 8 Cal.App.5th at p. 103.) The father was in the car as well. Both parents consistently maintained that the mother had " 'had a couple of beers' " that evening, but that she " 'wasn't drunk,' " and that she did not have a drinking problem. (*Id.* at p. 105.) The mother further denied a documented incident of domestic violence with the father several years prior, which had involved alcohol. (*Ibid.*) Although the parents initially expressed a willingness to cooperate with DCFS in order to keep their children, they later "claimed [DCFS] involvement with the family was unwarranted." (*Ibid.*) The criminal court ordered the mother to participate in parenting classes and an alcohol and drug education and counseling program. The mother completed neither, and had only taken three parenting classes. (*Id.* at p. 106.) The mother had also taken three drug and alcohol tests as of the jurisdictional hearing, all of which were negative. (*Id.* at p. 105.)

The opinion in *In re M.R.* distinguished *In re J.N.* by noting that the parents in *In re M.R.*—unlike those in *In re J.N.*—(1) "continued to minimize the seriousness of the incident during the dependency proceedings" and (2) had not "taken any significant steps to participate in educational programs concerning the problematic use of alcohol that gave rise to the substantial risk to the children's safety." (*In re M.R.*, *supra,* 8 Cal.App.5th at p. 107.) The parents' minimization of the incident—specifically, the mother "maintaining she had consumed just one or two beers despite evidence of significant intoxication"—appears to have been the most

12

significant factor for the appellate court in *In re M.R.*, which explained that, "unlike *[In re] J.N.*, the parents' minimization of [the] [m]other's conduct . . . *did* call into question their general judgment." (*Id.* at p. 109, italics added.)  The court viewed this as "[e]xacerbat[ed]" by "the fact that the parents' acceptance of responsibility seemed to worsen, rather than improve, as dependency proceedings progressed." (*Ibid.*)  Finally, the *In re M.R.* court noted the mother's being "subject to criminal court supervision" did not support the mother's appeal, given her lack of effort to participate in the services ordered as part of that supervision.  (*Id.* at pp. 109–110.)  The court also noted that the past "alcohol-related episode of domestic violence," although not suggesting an ongoing substance abuse problem, provided "further reason why the court could justifiably conclude there remained a risk to the children." (*Id.* at p. 110.)  On these bases, the court found substantial evidence supported the juvenile court's dispositional order under section 360, subdivision (b), requiring DCFS supervision for the family.  (*Id.* at p. 107.)

Considering the facts before us against a backdrop of these two decisions, "draw[ing] all reasonable inferences from the evidence" in favor of the juvenile court's order, and "review[ing] the record in the light most favorable to the court's determinations" (*In re M.R., supra*, 8 Cal.App.5th at p. 108), we conclude that substantial evidence supports the juvenile court's order here as well.  As did the Court of Appeal in *In re M.R.*, we find it significant that Father continues to deny he drank to excess—even in the face of evidence proving otherwise.  Specifically, Father continues to claim that he only had five beers with food over the course of the afternoon—something virtually impossible, given his BAC of 0.20 at 1:00 a.m. later that night.  The juvenile court could reasonably infer from this juxtaposition that Father is either in denial or lying

13

about choices that placed his young son in extreme danger, and that, unlike the parents in *In re J.N.*, Father's "general judgment" and "understanding of the risks of inappropriate alcohol use [are] so materially deficient that . . . [he] is unable 'to adequately supervise or protect' " his child.  (*In re J.N.*, *supra*, 181 Cal.App.4th at p. 1026, quoting § 300, subd. (b)(1).)  This inference is strengthened by the extreme level of intoxication involved and the way Father was driving—on the wrong side of the road with sparks flying from a vehicle with only three functioning tires—which was so egregious it led to a felony conviction for child endangerment.

Father correctly notes that, unlike the parents in *In re M.R,* Father appears to have taken significant steps towards completing the programs ordered by the criminal court, and has exhibited a positive attitude toward them.  He also does not have any previous instances of misconduct related to intoxication, as did the parents in *In re M.R.*  But in reviewing for substantial evidence, "we do not consider whether there is evidence from which the juvenile court could have drawn a different conclusion," but rather "whether there is substantial evidence to support the conclusion that the court did draw."  (*In re M.R.*, *supra*, 8 Cal.App.5th at p. 108;  *In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 ["the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is *any* substantial evidence, *whether or not contradicted*, which will support the conclusion of the trier of fact"], italics added.)  As noted, Father's implausible minimization of his alcohol intake on the evening in question provides such evidence.  Moreover, the court could have discounted the significance of Father's efforts in light of his apparent failure to complete the community service requirement of his previous conviction, and based thereon concluded that continuing supervision of some type was reasonably

necessary to assure Father continues to participate in his alcohol counseling and other programs.  Thus, in sustaining the petition and ordering DCFS supervision pursuant to section 360, subdivision (b), "the juvenile court carefully calibrated its jurisdictional finding[ ] and dispositional order to the facts before it."  (*In re M.R., supra,* 8 Cal.App.5th at pp. 107, 110.)  We find no reversible error in this decision, and therefore affirm.

## DISPOSITION

The January 13, 2020 order of the juvenile court is affirmed. NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



SINANIAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.