Filed 11/19/20  In re A.S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | B301424 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP04659A) |
| Plaintiff and Respondent, | |
| v. | |
| QUINCY S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Quincy S. (father) appeals from the order of the juvenile court taking jurisdiction over his teenaged daughter, A.S. Father contends that the evidence does not support the finding A.S. is a dependent of the court under Welfare and Institutions Code[1] section 300, subdivision (b)(1). We affirm.

## BACKGROUND

Father and mother never married and were not in a relationship when the Department of Children and Family Services (DCFS) received a referral about A.S.

The child, who lives with mother, has an on and off relationship with father and had not seen him in three months when the incident occurred in May 2019. That day, A.S. was at the paternal grandmother's house playing cards with paternal aunt when father arrived. A.S. refused to speak to father causing him to become upset that she was being disrespectful. The two exchanged words and then father "popped" his daughter in the mouth at least twice. Panicked, paternal aunt called mother to pick A.S. up.

A.S. and paternal aunt were present when mother arrived. Paternal aunt described father as "looking for a fight." Mother told father "not to put his fucking hands on my daughter," to which father replied, "you're not going to tell me what to do. I'll beat your ass." Father pushed mother and she stumbled

_____

[1] All further statutory references are to the Welfare and Institutions Code.

backwards but pushed father back. The two began to fight. He hit her on the side of the face with his fist around the temple and cheek. She hit him back with a knife. A.S. sustained a cut on her finger when she tried to stop her parents' violence. Paternal grandmother told them to leave and so mother and A.S., who was crying, got into the car. Father then kicked the car's sideview mirror off. A.S. confirmed these events and later told paternal aunt that if father had "just left us alone this wouldn't have happened." Father sustained lacerations and stab wounds.

DCFS filed a petition under section 300, subdivisions (a) and (b)(1) alleging father's physical abuse of A.S. (counts a-1 and b-) and domestic violence (counts a-2 and b-2). The juvenile court removed A.S. from her parents. DCFS placed her with maternal grandmother.

After the detention, mother was cooperative and visited the child daily. She reported having experienced domestic violence in the past with father. In the worst incident, the two fought physically when mother was seven months pregnant with A.S. Father went to jail.

N.G., the mother of father's oldest child, C.S., reported that in the past father and N.G. engaged in domestic violence. They were each arrested once for fighting. N.G. sought a restraining order against father once to mollify C.S.'s school because father had become angry when C.S. did not want him to pick her up "and threw some things around at the school."

A.S. did not wish to have visits with father.

Mother stipulated to the petition's allegations. The juvenile court sustained the petition as amended finding true the allegations in all counts as to mother and in counts b-1 (physical abuse of A.S.), and a-2 and b-2 (domestic violence) as to father.

3

(§ 300, subds. (a) & (b)(1).)  The court removed the child from her parents' custody and ordered reunification services.  Father appealed.

## DISCUSSION

Father contends the evidence does not support the order sustaining the count alleging domestic violence under subdivision (b)(1) of section 300[2] because the admitted violence between father and mother was "an isolated incident that was not likely to continue," where the last and only prior incident was 15 years earlier and where mother started it.

Section 300, subdivision (b)(1) invokes the jurisdiction of the juvenile court and describes a child who either "*has* suffered, or there is a substantial risk that the child *will suffer*, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (Italics added.)  The "use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is

---

[2] The juvenile court sustained count b-2 that alleged:  "The child A[.]S[.]'s mother, . . . and father . . . have a history of engaging in violent altercations in the presence of the child.  On 05/25/19, the father struck the mother's face with the father's fists and pushed the mother to the ground.  The mother pushed, struck and stabbed the father's back and neck with a knife inflicting three puncture wounds to the father's back which required 13 stitches and a superficial wound to the father's neck.  The father kicked the mother's vehicle and broke the rearview mirror while the child was inside the vehicle.  On a prior occasion, the father struck and pushed the mother.  The parents['] violent conduct endangers the child's physical health and safety, and places the child at risk of serious physical harm, damage and danger."

4

sufficient, standing alone, to establish dependency jurisdiction under these subdivisions." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435, fn. omitted.) If the jurisdictional allegations are based solely on risk to the child, that risk must be shown to exist at the time of the jurisdictional hearing. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 140.)

"[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg." (*Ibid*.; accord, *In re E.B.* (2010) 184 Cal.App.4th 568, 575–576.) We review the juvenile court's jurisdictional findings for substantial evidence. (*In re M.R.* (2017) 8 Cal.App.5th 101, 108.)

Here, the evidence was more than sufficient to support the juvenile court's domestic violence finding in count b-2. A.S. has already suffered harm. The entire fight took place in front of the child. She was cut when she tried to stop the fight. And she was crying in the car when father kicked the sideview mirror off.

Moreover, past " 'violent behavior in a relationship is 'the best predictor of future violence.' Studies demonstrate that once violence occurs in a relationship, the use of force will reoccur in 63% of those relationships. . . . Even if a batterer moves on to another relationship, he will continue to use physical force as a means of controlling his new partner.' " (*In re E.B.*, *supra*, 184 Cal.App.4th at p. 576.) A.S. knows that father is violent with women. N.G. confirmed that father fought with her and was

arrested for it. Then he moved on to a violent relationship with mother and hit her while she was seven months' pregnant with A.S. Father even hit A.S. multiple times Father's attempts to recast the evidence and downplay his role by blaming mother is unavailing. Father is pugnacious. He was " 'looking for a fight' " and threatened to "beat [mother's] ass' " that day. He threw things around at C.S.'s school. Violence in front of a child is still violence and father has demonstrated a long history of engaging in violence with women, including his own daughter, which is a good predictor of risk of harm to A.S.[3]

## DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.          EGERTON, J.

---

[3] As we affirm the order taking jurisdiction over A.S. based on father's conduct under count b-2, we need not address the merits of father's challenge to counts b-1 and a-1. "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

6