Filed 3/20/26  In re K.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.H. et al., <br><br> Defendants and Appellants. | C104200 <br><br> (Super. Ct. No. STK-JD-DP-2025-0000019) |

This is an appeal by appellants E.H. (mother) and U.A. (father) from a juvenile court's orders in a dependency proceeding involving minor K.A.  Father contends no substantial evidence supports the juvenile court's jurisdictional findings as to him, and mother contends the evidence was insufficient to support removal.  Because we find father's appeal does not raise a justiciable issue, we do not reach the merits of his contention and dismiss his appeal.  We reject mother's contention that the evidence was insufficient to support removal and affirm the juvenile court's orders.

1

## FACTS AND PROCEEDINGS

Shortly after minor K.A. was born in January 2025, the San Joaquin County Human Services Agency (the Agency) received a referral from a hospital social worker that mother had given birth to K.A. but had not begun prenatal care until August 2024 and had only six prenatal care visits before delivery. The referral stated that mother and minor tested negative for controlled substances and mother denied using drugs while pregnant with K.A. or using methamphetamine since minor's half sibling, A.B., was born in 2022. The referral further stated that (1) A.B. was removed in October 2022 after testing positive for methamphetamine; (2) mother was offered but failed to engage in reunification services with A.B.; and (3) in September 2024, mother's parental rights to A.B. were terminated and A.B. remained in an open dependency case pending adoption. The referral also stated that father had a criminal record indicating he was a Norteño gang member and had been in custody from January 8, 2025, to January 10, 2025, after being charged with vehicle theft, possession of a stolen vehicle, and possession of a controlled substance and mother and father shared custody of other children from prior relationships.

The next day, the social worker met parents at the hospital, and they refused to participate in an interview. The social worker later confirmed father's criminal history and sought a protective custody warrant for minor but was denied. The day after, the social worker provided mother with information for the detention hearing and told mother not to use drugs. Mother stated she would not use drugs, refused to sign any forms, and stated she and father were no longer homeless and were living at an address in Tracy they had given to the hospital. The social worker located father's telephone number after mother refused to provide it, and texted father with information for the detention hearing after no one answered and there was no option to leave a voicemail.

2

The Agency filed a petition under Welfare and Institutions Code section 300[1] and a report recommending minor's detention due to (1) mother's history of methamphetamine use; (2) mother's failure to reunify with K.A.'s half sibling, A.B., who was previously detained as a result of mother's use of methamphetamine throughout the pregnancy; (3) mother not receiving prenatal care until she was 21 weeks pregnant; (4) father's possible drug use, given that he was in custody in January 2025 for possession of a controlled substance and vehicle theft; (5) parents' refusal to participate in an interview or assessment; and (6) the social worker's inability to verify whether father and mother had a safe residence for minor. The Agency attached records from mother's 2022 dependency case involving minor's maternal half siblings and father's 2021 dependency case involving minor's paternal half sibling, who was removed in part because of father's history of substance abuse and criminal history, which resulted in the termination of father's parental rights. The Agency also attached records from father's October 2018, January 2020, October 2024, and January 2025 criminal cases for drug paraphernalia, a loaded firearm, a stolen vehicle, and multiple counts of possession of methamphetamine.

Parents did not appear at the initial detention hearing held on January 21, 2025. The court issued a bench warrant, declared father was minor's alleged father, and ordered minor detained in protective custody. At the next court hearing, held on January 23, 2025, the Agency informed the court that social workers were able to contact mother and visit her at a group home. There, the social workers observed mother and minor clean with baby supplies and no visible concerns and told mother to come to court because minor was ordered detained. The mother stated that she refused to talk to the social worker at the hospital because she felt she was being judged and was scared. The social

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

workers left minor in mother's home at that time because they saw no immediate threat and mother had a case manager and the assistance of the Tracy Police Department in finding housing. The Agency requested that minor remain with mother pending further hearing.

The Agency stated that a social worker had spoken with father, who indicated he was unable to make it to court. Minor's counsel indicated that mother had a history of not following through in her dependency cases and had initially refused to cooperate with the investigators, despite having prior cases. Minor's counsel expressed concern that mother was not attending court for her other child, did nothing to reunify, and her parental rights were terminated with that child.

The court ordered placement of minor with mother, subject to the condition that father not have any visits with minor until he appeared in juvenile court, due to his recent criminal history and being a documented gang member. Mother stated that father was not allowed at the group home. The court also ordered mother to appear at the next hearing and cooperate with the Agency and social workers, and it recalled the bench warrant.

The Agency's February 5, 2025, updated jurisdiction/disposition report recounted, among other things, the Agency's prior allegations regarding mother's history of substance abuse, the lack of prenatal care during the first half of pregnancy, negative drug tests for mother and minor, the termination of mother's parental rights to A.B., father's criminal record, parents' refusal to participate in an interview, and the Agency's inability to verify the family's housing situation.

The report showed that an Absent Parent Locator was submitted for father and the results showed that he was homeless, though an address and phone number were provided. The report showed that contact with father was made but he was always too busy to speak with the social worker. The report recounted father's two prior

4

dependency cases in which he failed to reunify and his parental rights were terminated in October 2022 and January 2023.

The report also contained mother's family background and work history. Mother reported she was raised by minor's maternal grandparents, currently unemployed, and receiving housing through a Tracy Police Department program. Mother reported that her substance abuse began when she was about 20 years old and admitted she tested positive for methamphetamine when she delivered A.B., but claimed she had been clean for over a year before she learned she was pregnant with K.A. Mother reported having children ages 12 and 13, over whom their father gained full custody, and being in a relationship with father U.A. for three years and knowing him for seven years, with no problems in the relationship.

Mother reported that her supervision by probation closed in September 2021. Mother denied father stole the trailer reported in their most recent encounter with the Tracy Police Department and reported he was going to court to contest the charge. Mother reported that this dependency case was different from the prior case because she wanted the baby, was sober, and made sure to take care of herself and minor.

The Agency reported that mother was doing well with a good support system at her current residence and minor was also doing well with no concerns. It recommended family maintenance for mother and that minor remain in mother's care, but services not be provided to father until paternity was established. After filing the updated report, the Agency filed an amended section 300 petition adding allegations regarding father's child from another relationship, father's criminal history, and father's history of substance abuse.

At the April 17, 2025, placement hearing, the Agency informed the court that the house manager where mother lived reported that she had been discharged because mother allowed father into the home several times, in violation of the home's rules, which also violated the court's order that mother not allow father around minor. The Agency

5

indicated that minor was removed from mother and placed in a foster home, and mother was not present but was aware of the hearing. The Agency explained that mother told the social worker she had car problems and refused a ride from the social worker to the hearing.

The Agency stated that it would file an updated report which would recommend changing from family maintenance services to reunification. The Agency also informed the court that it had minor's birth certificate containing father's name, and the court declared father was minor's presumed father and counsel was appointed. Minor's counsel agreed with the removal of minor from mother, and the court ordered minor removed from mother with supervised visits.

Parents did not appear at the April 24, 2025, placement hearing, and the court ordered supervised visitation for father. The Agency stated its intention to offer mother reunification services, but minor's counsel objected due to the half sibling awaiting adoption and requested a contested hearing.

The Agency's April 29, 2025, supplemental jurisdictional/disposition report explained that minor could not be safely maintained in mother's care because she went against the court's order not to allow father around minor by allowing him to stay overnight at her home on more than one occasion. Mother was also kicked out of the home for violation of house rules because of father's visits, showing an inability to maintain boundaries with father and maintain stable housing despite a strong support system, raising concerns about possible continued drug use and her ability to care for minor. The report explained that father had not appeared in the proceedings and had told the social worker there was no reason for him to do so, and it noted that father was out on bail on his criminal charges.

The Agency recommended reunification services to parents, including counseling, substance abuse treatment, and participation in drug court and PROP (Parental Recovery Option Plan) assessments. The Agency noted that mother completed a parenting

6

education course in February 2023.  The Agency recommended that minor remain in out-of-home placement.  On June 12, 2025, the court ordered placement of minor with the maternal grandmother conditioned on parents' visitation remaining as previously ordered.

At the July 8, 2025, contested jurisdiction/dispositional hearing, the juvenile court received the Agency reports and father's inmate summary into evidence and heard testimony from a social worker, whose testimony was consistent with those reports.  The social worker also testified that parents both interacted well with minor during visits but had expressed concerns about various health issues with the child.  The social worker also testified minor was placed in a foster home and not with the maternal grandmother because parents requested to wait until the dispositional hearing was completed.  The social worker reported that minor's caretaker would no longer be able to care for minor due to parents' harassment, and parents were very argumentative during supervised visits.  The social worker further testified that she informed father he needed to take care of his criminal matters as part of his case plan.

After testimony and argument, the juvenile court acknowledged that mother and minor tested negative for drugs and mother had some prenatal visits, albeit late in the pregnancy.  The court noted that it had to consider the totality of the circumstances, and it understood the parents' unwillingness to communicate with the Agency was due to their prior dependency cases.  However, the court noted that neither parent appeared in court despite receiving notice, that mother had a prior case with another child that tested positive for drugs about a year earlier, and that she had not completed services.  The court explained that although mother tested negative for drugs at the time of K.A.'s birth, she still could have been using drugs, given her history of substance abuse.

The juvenile court further noted that the prior judge in the case had specifically ordered that minor could stay with mother if she stayed at the group home and father was not there.  However, mother allowed father to visit more than once, in addition to other rule violations at the home, causing her to be kicked out of the home.  Given mother's

7

violation of the court's explicit order and her history of substance abuse which needed to be addressed, the court found there was enough evidence to find the petition true as to mother.

The court acknowledged father's negative history with the Agency and parents' legitimate concerns about minor's health, but noted father's criminal history going back several years with offenses involving alcohol and drugs and a recent arrest for possession of controlled substances. The court also explained father's gang involvement raised a risk of harm to a child, especially considering father's conviction for carrying a loaded weapon. The court also noted father's two prior cases in which he failed to reunify with other children.

The court found the allegations in the amended petition true by a preponderance of the evidence and found that minor K.A. came within the jurisdiction of the court. Father then left the hearing and did not return. Mother argued for family maintenance because parents had been consistent in their visits and mother had completed the requested counseling, but the court expressed an unwillingness to return to family maintenance until it had more time to assess parents' progress. Over parents' objections, the court found a drug court assessment was warranted given the evidence presented. The court ordered minor be made a dependent of the juvenile court and found by clear and convincing evidence that (1) minor's physical custody must be taken from the home of the parent where he was at the time of removal, based on the facts of the supplemental dispositional report, and (2) placement was appropriate and necessary. The court then ordered reunification services be provided to parents, including participation in drug court.

Mother and father timely appealed the juvenile court's jurisdictional and dispositional findings and orders.

DISCUSSION

*Jurisdiction*

Father challenges the juvenile court's jurisdiction, arguing there was insufficient evidence that he abused substances or that his drug use, criminal history, and gang affiliation placed minor at a substantial risk of harm.

The juvenile court has jurisdiction to declare a child to be a dependent of the court pursuant to subdivision (b) of section 300 when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of any of the following: [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] . . . [¶] (D) The inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b).) "We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result." (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.)

Here, neither mother nor father challenges the court's finding of jurisdiction over the child based on the allegations as to mother. "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Because neither parent challenges the court's finding of jurisdiction as to mother, jurisdiction over the minor remains. Vacating the court's jurisdictional finding regarding father would have no legal or practical consequence.

Father argues that he may challenge the juvenile court's finding of jurisdiction based on the allegations related to him, notwithstanding the jurisdiction based on the allegations related to mother, because the court's findings that he presented a risk to minor could potentially impact future dependency proceedings and because the court

ordered him to participate in reunification services. He contends that, for these reasons, he continues to be prejudiced by the jurisdictional findings. We disagree.

First, father's vague concerns about the potential unspecified effects of the challenged finding in hypothetical future dependency proceedings is speculative and insufficient to create a justiciable controversy. (See *In re D.P.* (2023) 14 Cal.5th 266, 278-282.) Regarding the reunification services, even if the court had not found the jurisdictional allegations relating to father true (or such findings were stricken), the court's orders relating to father's reunification services would not be vacated. Once dependency jurisdiction has been established, a court can make orders binding on a parent, including the provision of reunification services, even if there are no sustained jurisdictional findings involving the conduct of that parent. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.)

"The juvenile court may make 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child,' " and "there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) Given father's history of drug use, criminal history, gang affiliation, and termination of his parent rights with other children, the juvenile court reasonably ordered him to participate in reunification services, including drug court. Thus, the juvenile court's order of reunification services does not establish ongoing prejudice, and any order we enter relating to the challenged jurisdictional findings will have no practical impact on the pending dependency proceeding. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492.) Because father has provided no other reason for us to exercise our discretion to decide otherwise nonjusticiable issue on the merits, we decline to do so. (See *In re D.P.*, 14 Cal.5th at pp. 283-286; *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1491.)

*Removal*

Mother challenges the juvenile court's removal order, arguing there was not clear and convincing evidence that (1) returning minor to her custody posed a substantial danger to minor, and (2) there were no reasonable means by which minor's health could be protected without removing minor from parents. In support, mother argues there were no issues with minor's care, health, or development during the four months the child was with her before the child was placed in a foster home.

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) A substantial risk "represents some danger to the child's physical or emotional well-being." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1490.) The court also must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) Removal findings are reviewed under the substantial evidence test, drawing all reasonable inferences to support the findings and noting that issues of credibility are matters for the juvenile court. (*In re Heather A.*, *supra*, 52 Cal. App.4th at p. 193.)

Here, the court specifically ordered mother not to allow father around minor, given its concern for minor's safety in light of father's substance abuse, criminal history, and gang affiliation -- an order mother acknowledged in court. Mother then, notwithstanding her knowledge of the accusations against father and the court's safety concerns, repeatedly violated that order, as well as the group home's rules, leading her to be kicked out of the home. This blatant disregard of the court's order calls into serious doubt

11

mother's desire and ability to obey any other conditions given by the court for minor's safety. Given the evidence presented regarding these violations, parents' substance abuse, father's criminal history and gang affiliation, and parents' failure to complete services and termination of their parental rights for their other children, the juvenile court reasonably concluded there would be a substantial danger to the child's physical health and safety if the child was returned to mother's physical custody.

"A parent's past conduct is a good predictor of future behavior" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133), and mother's conduct with her other child and repeated violations of the juvenile court's order supports a conclusion that K.A. could not safely be returned to mother's custody even if the court imposed conditions such as random drug testing or continued participation in a sobriety program.[2] (See *In re M.R.* (2017) 8 Cal.App.5th 101, 108 ["we do not consider whether . . . the juvenile court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw"].) Drawing all inferences in favor of the juvenile court's findings, substantial evidence supports the order of removal. (See *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.)

---

[2] We note that at the time of disposition, parents did not propose any conditions in the alternative to removal, but mother raises these proposals in her briefing on appeal.

DISPOSITION

Father's appeal is dismissed.

The orders and judgment of the juvenile court are affirmed.


/s/
WISEMAN, J.*


We concur:


/s/
ROBIE, Acting P. J.


/s/
MAURO, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.