Filed 12/16/21 In re K.R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.R. et al., Persons Coming Under the Juvenile Court Law. | B311121 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. Nos. 20CCJP05378A, 20CCJP05378B |
| Plaintiff and Respondent, | |
| v. | |
| A.E., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Martha Matthews, Judge. Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court sustained a petition under section 300 of the Welfare and Institutions Code,[1] after finding A.E. (mother) drove her child while under the influence of alcohol. Mother challenges the sufficiency of the evidence supporting the court's jurisdictional findings. Specifically, she argues there is insufficient evidence showing a current risk of harm to her children as of the jurisdiction hearing. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Los Angeles Department of Children and Family Services (DCFS) received a report that mother was arrested for driving 100 miles per hour while under the influence of alcohol. The reporter said mother's four-year-old daughter, Ky.R., was in a car seat, but she was not properly restrained in it.

According to the police report of the arrest, around 1:35 a.m. on August 29, 2020, officers pulled mother over for driving at an "extreme high rate of speed." The officers smelled alcohol inside the vehicle, and mother told them she drank one and a half glasses of wine between 9 and 11 p.m. the night before. Mother smelled of alcohol, and her eyes were red and watery. She failed the field sobriety tests and her blood alcohol content (BAC) was measured to be .13 percent.

During DCFS's investigation, mother confirmed the referral was true. She said she was visiting family members that night and drank three glasses of wine starting around 9 or 10 p.m. Mother said she understood the severity of the incident. She denied having alcohol abuse issues, but agreed to enroll in an Alcoholics Anonymous (AA) program. Mother

---

[1] Future statutory references are to the Welfare and Institutions Code.

also agreed to weekly and on-demand alcohol tests. She tested negative for alcohol on September 11, 2020.

Mother's other child, six-year-old K.R., was with maternal grandmother during the incident. K.R. said he had never seen mother drink alcohol, and he expressed feeling happy and safe at home. There were no signs that K.R. or Ky.R. were abused or neglected.

Maternal grandmother said she was shocked when she learned mother had been arrested. She said mother drinks occasionally, but does not get drunk or drive while drinking. Maternal grandmother described mother as loving and protective of her children.

The children's father reported that mother drinks occasionally, but not heavily. He denied any knowledge that mother has substance abuse issues, and he had never seen her drive while under the influence of alcohol.

Paternal grandmother also had never seen mother drive while under the influence of alcohol, and she had no concerns about mother's drinking. She described mother as attentive to her children and a " 'good mother.' "

On October 9, 2020, DCFS filed a petition to declare Ky.R. and K.R. dependents under section 300, subdivisions (b) and (j). The petition alleged mother placed Ky.R. in a detrimental and endangering situation by driving a vehicle at a high speed while under the influence of alcohol, and failing to secure Ky.R. in a child safety restraint seat. The petition further alleged mother's conduct created a detrimental home environment, which placed both children at risk of harm.

At the October 14, 2020 detention hearing, the court released the children to mother on the condition that she submit

to random alcohol/drug tests and attend two AA meetings per week.

On November 24, 2020, mother told a DCFS investigator she " 'had a few drinks or two' " the night of her arrest, but was not drunk while she was driving. Mother also said she did not realize she was driving at 100 miles per hour. She claimed she had never done anything like that before and was learning from the experience. According to mother, she usually does not drink around Ky.R., but she was " 'stressed' " and " 'going through changes.' " She said she had not been contacted about her criminal case.

Mother tested negative for drugs and alcohol on December 7, 2020, but failed to appear for the next four tests. Mother claimed she was not using alcohol because she was pregnant, and she did not show up for the tests because her name did not appear on the list to do so. As of March 1, 2021, mother had attended only two AA meetings, one in early January and one in early February.[2]

The court held a combined jurisdiction/disposition hearing on March 5, 2021. Mother's counsel urged the court to dismiss the petition because there was not a current risk of harm to the children. Counsel noted that mother understood the severity of the situation, this was an isolated incident, and there was no evidence showing she has a drinking problem.

The court sustained the petition, explaining it was "difficult to understand" how the incident occurred if mother

---

[2] The record shows mother was on a waitlist for an AA program as of December 2, 2020. It is not clear when she was accepted into the program.

did not have a drinking problem. The court further noted that mother attended only two AA meetings and failed to appear for alcohol tests, despite claiming to understand the seriousness of the incident. The court also expressed skepticism of mother's claim that she drank only three glasses of wine the night of the incident.

As to disposition, the court declared the children dependents and released them to their parents' custody after finding there were reasonable services available to prevent removal. The court signed a case plan requiring mother to participate in a 12-step program, submit to weekly alcohol tests, and attend individual counseling.

Mother timely appealed.

## DISCUSSION

Mother contends there is insufficient evidence supporting the juvenile court's jurisdictional findings under section 300, subdivisions (b) and (j).[3]

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support

---

[3] On November 2, 2021, while this appeal was pending, DCFS informed us that the juvenile court recently terminated jurisdiction over the children. DCFS did not request that we dismiss mother's appeal as moot. We take judicial notice of the court's October 29, 2021 minute orders terminating its jurisdiction. (Evid. Code, § 452, subd. (d).) Although the orders may have mooted mother's appeal, out of an abundance of caution, we exercise our discretion to address her arguments on the merits. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.)

the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Under section 300, subdivision (b), the juvenile court may exercise jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the failure of his or her parent to "adequately supervise or protect the child." (§ 300, subd. (b)(1).) Under section 300, subdivision (j), the court may take jurisdiction over a sibling of a child who has been neglected under section 300, subdivision (b) if there is a substantial risk the sibling will also be neglected.

A jurisdictional finding may be based on a single episode of endangering conduct if there is evidence showing the conduct is likely to recur. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993; *In re J.N.* (2010) 181 Cal.App.4th 1010, 1026 (*J.N.*).) Although evidence of past conduct may be probative of current conditions, "[t]o establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.' " (*Yolanda L.*, at p. 993; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) Whether a child is still at risk due to a parent's past conduct turns on whether that conduct "is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *Yolanda L.*, at p. 993.)

"In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of

6

and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident. The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*J.N., supra*, 181 Cal.App.4th at pp. 1025–1026.)

Here, the juvenile court took jurisdiction over the children after finding mother drove Ky.R. at 100 miles per hour while intoxicated. Mother further increased the risk to the child by not properly securing her in a car seat. Mother does not challenge these findings. She also concedes the incident was extremely serious, as there was a very real risk that Ky.R. would be severely injured or killed.

Nevertheless, mother insists the court erred by taking jurisdiction over the children because there is insufficient evidence to establish a substantial risk that a similar incident will recur. In support, she points out that she consistently expressed an understanding of the severity and seriousness of her conduct, tested negative for alcohol, attended AA meetings, and stopped drinking alcohol after her arrest. In addition, DCFS reported her children were comfortable, happy, and healthy in her care, and none of her relatives expressed concerns about her ability to parent. Mother also insists there is no evidence that she drinks regularly, has a substance abuse issue, or engaged in similar conduct in the past.

7

Mother contends this case is similar to *J.N., supra*, 181 Cal.App.4th 1010, in which the court reversed jurisdictional findings premised on a single incident of drunk driving. There, the father drove under the influence with his three children and intoxicated wife. The father crashed into a light pole, injuring two of the children, and both parents were taken into custody. (*Id*. at pp. 1014–1015.) The reviewing court recognized the "profound seriousness of the parents' endangering conduct," but concluded there was no evidence from which to infer a substantial risk that their behavior would recur. (*Id*. at p. 1026.) The court noted the parents were remorseful, loving, and willing to learn from their mistakes. (*Ibid*.) There was also no evidence of ongoing substance abuse, or anything else indicating the parents' "understanding of the risks of inappropriate alcohol use" was "so materially deficient" to render them "unable 'to adequately supervise or protect' the children." (*Ibid*.) Further, as of the jurisdiction hearing, the father was incarcerated, and the criminal court had placed the mother under supervised release and ordered her to complete substance abuse and parenting programs. (*Ibid*.)

DCFS argues this case more closely resembles *In re M.R.* (2017) 8 Cal.App.5th 101 (*M.R.*), which also involved a single incident of drunk driving. In *M.R.*, the court took jurisdiction over two children after finding their mother drove 80 miles per hour with a BAC of .14 percent while the children were not properly restrained by seat belts. (*Id*. at p. 103.) The father was a passenger in the car and also intoxicated. The parents initially agreed to cooperate with DCFS. (*Id*. at p. 104.) Later, however, they insisted the mother was not drunk and claimed they did not need services. (*Id*. at p. 105.) As of the jurisdiction hearing,

the mother had completed three parenting classes and planned to enroll in substance abuse and individual counseling. (*Id.* at p. 106.)

In affirming the jurisdictional findings, the Court of Appeal distinguished *J.N.* primarily on the basis that the parents' minimization of the mother's conduct "call[ed] into question their general judgment." (*M.R.*, *supra*, 8 Cal.App.5th at p. 109.) The court further noted the parents' acceptance of responsibility worsened over time, the mother had not participated in an alcohol education program, and the parents had engaged in a prior alcohol-related episode of domestic violence around four years earlier. (*Id.* at pp. 104, 109–110.)

We agree with DCFS that this case more closely resembles *M.R.* than *J.N.* Like the parents in *M.R.*, mother minimized the extent of her drinking on the night of her arrest, and her acceptance of responsibility seemed to diminish over time. According to the police report, mother smelled of alcohol, failed field sobriety tests, and had a BAC of .13 percent, well over the legal limit to drive. Despite this, she told the officers she drank only one and a half glasses of wine several hours earlier. Mother subsequently gave a somewhat more reasonable estimate of her drinking, telling a social worker she had three glasses of wine that night. A few months later, however, mother seemed to backtrack, inexplicably claiming she only " 'had a few drinks or two' " and was not drunk while she was driving. Mother's minimization of her conduct and insistence that she was not drunk, despite overwhelming evidence to the contrary, calls into question her general judgment. (See *M.R., supra*, 8 Cal.App.5th at p. 109; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

The juvenile court could also reasonably conclude that, like the parents in *M.R.*, mother had not made a serious effort to resolve whatever issues led her to drive Ky.R. while intoxicated. Mother suggested she drove while drunk because she was stressed and " 'going through changes,' " but she offered no plan for how she intended to cope with those issues in the future. Although mother enrolled in an AA program, she attended only two meetings over the course of several months. Mother points out that she attended the same number of AA meetings as the father in *J.N.* While true, the father in *J.N.* also enrolled in a non-AA substance abuse prevention program, something mother did not do. (*J.N., supra*, 181 Cal.App.4th at p. 1015, fn. 4.) Further, unlike the parents in *J.N.*, mother was not subject to criminal court orders or supervision that might help prevent a recurrence.[4]

There is also evidence that mother continued to drink alcohol after her arrest, despite her claims otherwise. As of the jurisdiction hearing, mother had missed her four most recent alcohol tests, which the court could consider to be positive.[5]

---

[4] Mother suggests she will be subject to criminal court supervision in the future given she admitted driving while intoxicated. Even if true, the record does not indicate when that supervision will begin. Mother, in fact, told DCFS she had not heard from the criminal court and did not know the status of her case as of November 2020.

[5] The juvenile court erroneously remarked at the hearing that mother did not appear for any alcohol tests. In fact, mother appeared and tested negative for alcohol in September and December 2020. However, given the timing and frequency of mother's missed tests, we are confident the court would have sustained the petition had it considered the negative tests.

(See *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343 ["we must consider the missed [drug] tests to be positive tests"].)  Contrary to mother's suggestions, the court was not required to accept her excuses for failing to appear, or her insistence that she stopped drinking alcohol after her arrest. Indeed, given mother's dubious claims about the extent of her drinking the night of her arrest, the court could reasonably conclude she lacked all credibility on the subject of her alcohol use.

Mother suggests her failure to attend more AA meetings and submit to alcohol testing should not be used against her because the juvenile court could not order her to participate in services before taking jurisdiction over the children.  (See *In re E.E.* (2020) 49 Cal.App.5th 195, 209 ["before jurisdiction, the court can issue . . . orders directing the social services agency to provide services, but it cannot order or otherwise compel the parent to cooperate with the agency"].)  While mother is correct that the court could not order her to participate in services, it was free to use her failure to do so as evidence at the hearing on the petition.  (*Ibid.*)

We acknowledge there is evidence from which the juvenile court could have found mother's conduct is not likely to recur. On appeal, however, we must view the evidence in the light most favorable to the court's determinations.  (*In re R.T., supra,* 3 Cal.5th at p. 633.)  For the reasons discussed above, there is substantial evidence showing an ongoing risk to both children. The court, therefore, properly sustained the petition under section 300, subdivisions (b) and (j).

11

## DISPOSITION

We affirm the juvenile court's orders.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

WINDHAM, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.