Filed 3/8/23  In re J.G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | B319637 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.R.,<br><br>    Defendant and Appellant. | Los Angeles County Super. Ct. No. 22LJJP00036A |

APPEALS from orders of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge. Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

A.R. (mother) appeals from the dependency court's adjudication and disposition orders regarding her six-year-old son, J.G. (the minor). The court found jurisdiction over the minor under Welfare and Institutions Code section 300, subdivisions (a) and (b), due to physical abuse by mother and her husband (stepfather), and mother's failure to protect the minor from stepfather's abuse.[1] The court also removed the minor from mother's home and placed him with his biological father (father) under the supervision of the Department of Children and Family Services (Department). Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mother and father have one child together and were in the process of obtaining a family law custody order before these proceedings began. The minor, who was then six years old, had been living with mother and stepfather in Kern County but was in father's custody at the outset of these proceedings.

The minor came to the attention of the Department in early December 2021, when the minor was briefly hospitalized due to severe asthma. A medical social worker expressed concern that mother and father were not communicating effectively regarding the minor's medical needs. Father had also reported that the minor told him stepfather hit the minor with a belt on multiple occasions.

The Department filed a detention report in late January 2022 which summarized the initial investigation. Father advised

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

that he had taken custody of the minor on December 1, 2021, but did not have the minor's current asthma medication. The minor began having difficulty breathing a few days later, which resulted in his hospitalization. Father said that the minor had disclosed that stepfather and the maternal grandfather[2] had hit the minor with a belt.

A Department social worker observed marks on the minor's body: several scratch marks on his right leg, a few dark spots on the top of his feet, two scars on his left arm, and a couple of scars on his right arm. The minor also told the social worker that when he got in trouble, mother and stepfather " 'whoops me.' " Although the minor reported feeling safe with mother and stepfather, he stated that they would hit him in the buttocks area with an open hand on occasion. The minor also said that stepfather would hit him with a belt " 'everywhere' " and described the hitting as " 'hard and hurts.' " On one occasion, the minor said, stepfather hit the minor in the head with a belt, causing a bump. Mother and stepfather denied the allegations of physical abuse and suggested that father and his family had been coaching the minor.

In mid-December, Janie Salazar[3] conducted a forensic medical examination of the minor. Her report indicated that during the exam, the minor disclosed physical abuse by mother and stepfather. Specifically, the minor said that stepfather "hits me with a belt and my mom hits me with a hanger and

---

[2] The minor stated that he did not know who the maternal grandfather was.

[3] The Department's report incorrectly states that Salazar is a physician. She is a nurse practitioner.

sometimes she tried to throw it at me. I hide under the bed, but he (step-father) crawls under there and he grabs me by my hand and drags me out." As for physical findings, the report stated the minor "has multiple hyperpigmented marks on this body, more than the majority of children his age. He has linear parallel marks, and loop marks on his body which are consistent with belt marks. The history provided by the child of being hit with a belt [is] consistent with the physical findings on examination today. He is a victim of excessive corporal punishment which his mother and step-father deny doing and likely a victim of physical abuse."

On January 25, 2022, the Department filed a petition under section 300, subdivisions (a) and (b), alleging physical abuse by mother and mother's failure to protect the minor from physical abuse by stepfather. The court held the detention hearing on January 28, 2022. The minor was detained from mother and placed with father under the supervision of the Department. The court ordered monitored visitation for mother a minimum of three times a week for three hours per visit. The court issued a no-contact order for minor and stepfather.

The Department filed its jurisdiction and disposition report on February 28, 2022. The author of the report (the investigator) had interviewed the minor in father's presence at his home. According to the investigator, the minor said stepfather " 'whipped me everywhere all the time' " He also stated that stepfather " 'whipped me with a belt. I be jumping while he's hitting me everywhere with the belt.' " The investigator asked if mother ever hit him with an open hand or belt and he responded, " 'Both; my mama really didn't hit me that much.' " The investigator also asked whether mother ever hit him with a hanger and he said, " 'Sometimes; my mama didn't really hit me

4

that much.' " The investigator then asked whether there was ever a time that the minor was hiding under the bed and stepfather pulled him out from underneath. The minor stated, " 'Yeah, he pulled me from under the bed and whipped me everywhere.' " Father again indicated that the minor had reported being hit by stepfather while at mother's home. Mother again denied all claims of physical abuse or discipline by herself and stepfather.

The court held a contested adjudication and disposition hearing on March 17, 2022. The investigator who interviewed the minor and prepared the Department's second report testified. Mother also testified and denied all allegations of physical abuse. The court received and admitted several exhibits from mother, including her written statement and some of the minor's medical records. The court admitted the Department's two reports into evidence as well.

The court sustained the jurisdictional allegations of the petition as pled:

"a-1 [¶] On prior occasions, the [minor's mother] physically abused the child by striking the child with hangers and throwing hangers at the child. Such physical abuse was excessive and caused the child unreasonable pain and suffering. Such physical abuse of the child by the mother endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage, danger and physical abuse."

"b-1 [¶] On prior occasions, the [minor's mother] physically abused the child by striking the child with hangers and throwing hangers at the child. Such physical abuse was excessive and caused the child unreasonable pain and suffering. Such physical abuse of the child by the mother endangers the child's physical

5

health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage, danger and physical abuse.

"b-2 [¶] On prior occasions, the [minor's stepfather] physically abused the child by striking the child's body with belts inflicting pain, linear parallel marks and loop marks on the child's thigh, torso and feet. On a prior occasion, [stepfather] struck the child's head inflicting a bump to the child's head. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The child's mother knew of the physical abuse of the child by [stepfather] and the mother failed to take action to protect the child. The mother allowed [stepfather] to reside in the child's home and to have unlimited access to the child. Such physical abuse of the child by [stepfather] and the mother's failure to protect the child, endanger the child's physical health and safety, create a detrimental home environment and place the child at risk of serious physical harm, damage, danger, physical abuse and failure to protect."

At the hearing, the court acknowledged the conflicting evidence presented but stated that it was persuaded by the fact that the minor's account of physical abuse remained consistent throughout the case and that the medical evidence tended to corroborate his account.

As to disposition, the court found by clear and convincing evidence that removal of the minor from mother's care and custody was necessary. The court ordered the minor placed in father's home under the supervision of the Department. The court left its monitored visitation order in place for mother, with

6

discretion for the Department to liberalize. Mother's case plan included parenting classes and individual counseling.[4]

## DISCUSSION

Mother challenges the court's jurisdictional findings as well as the removal order. We address those issues in turn.

### 1.    Standard of Review

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. … "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Substantial evidence is " 'evidence which is reasonable, credible, and of solid value[.]' " (*In re I.C.* (2018) 4 Cal.5th 869, 892.)

[4] Father requested and received a permanent restraining order prohibiting mother from contacting him or members of his family other than the minor.

7

Finally, and with respect to the court's removal order, which requires proof of substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor by clear and convincing evidence (§ 361, subd. (c)), we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

## 2. Substantial evidence supports the court's jurisdictional finding that mother failed to protect the minor from stepfather's physical abuse.

Mother argues that none of the three jurisdictional allegations is supported by substantial evidence. But " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) We therefore address only the allegation under section 300, subdivision (b), regarding mother's failure to protect the minor from stepfather's physical abuse, and we find it to be supported by substantial evidence.[5]

---

[5] We need not, and therefore do not, address mother's arguments regarding the other two jurisdictional allegations.

Under section 300, subdivision (b), a juvenile court may exercise dependency jurisdiction if the " 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child … .' " (See *In re E.E.* (2020) 49 Cal.App.5th 195, 205.) "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

Section 300, subdivision (b) applies, as pertinent here, when a child has suffered "serious physical harm" as a result of a parent's failure to protect the child. There is substantial evidence that the minor suffered serious physical harm at the hands of stepfather and that mother failed to protect the minor. Specifically, the minor stated that he had been beaten with a belt by stepfather on multiple occasions. He indicated that the beatings were " 'hard' " and " 'hurt,' " and on at least one occasion he was hit in the head with the belt, which left a lump. These beatings happened with some frequency, as the minor said stepfather " 'whipped me everywhere all the time.' " The minor's attempts to avoid stepfather's abuse were unsuccessful. He said that when he tried to hide, stepfather " 'pulled me from under the bed and whipped me everywhere.' " Medical evidence

9

corroborated the minor's statements. Indeed, the forensic medical examination revealed that the minor had suffered bruises in the shape of parallel lines and loops, consistent with the use of a belt during corporal punishment.

Mother contends that substantial evidence contradicts the minor's assertions of abuse. For example, mother notes that the physicians who examined the minor during his hospitalization did not observe any signs of physical abuse. And mother contends that those findings were never shared with the nurse who conducted the forensic physical examination of the minor. She also urges that father had sole custody of the minor for two months before the Department filed its petition, insinuating that he had time to coach the minor and motive to do so in light of the couple's ongoing custody dispute.

Essentially, mother invites us to reweigh the evidence before the juvenile court and make a finding in her favor. That is not our role, however. (See *In re I.C., supra*, 4 Cal.5th at p. 892 [noting appellate court does not reweigh the evidence or exercise independent judgment, instead determines whether sufficient facts support the order of the trial court].) This is particularly true where, as here, the court properly considered all the conflicting evidence and found that the minor's account was credible. Such credibility determinations are entitled to deference. (See, e.g., *In re R.T.* (2017) 3 Cal.5th 622, 633.) In any event, the finding is amply supported. Viewing the evidence in the light most favorable to the court's ruling, the record shows that the minor told five different people (father, paternal grandmother, social worker, dependency investigator, forensic medical examiner) during at least five separate interviews that stepfather whipped him with a belt on multiple occasions. The

10

court rejected mother's argument that the minor had been coached by father because the minor's statements were consistent over time and corroborated by the forensic medical examination. We see no error in the court's conclusion.

**3.      The removal order is supported by substantial evidence.**

Mother also argues the court erred in removing the minor from her custody. Again, we disagree.

Removing a child from a parent's custody is a matter of last resort. Accordingly, section 361, subdivision (c), limits " 'the court's authority to restrict a parent's rights following the exercise of dependency jurisdiction.' " (*In re S.R.* (2020) 48 Cal.App.5th 204, 218–219.) The provision states in pertinent part: "A dependent child shall not be taken from the physical custody of his or her parents … with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances[:] … [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor [was] returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody. …" (§ 361, subd. (c)(1).) As noted, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B., supra,* 9 Cal.5th at p. 1005.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and

11

(2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court may consider the parent's past conduct as well as the present circumstances. (See, e.g., *In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

Mother's only challenge to the court's removal order rests on her contention that some of the evidence presented to the court contradicted the minor's statements that he was physically abused by stepfather. But as we have already explained, we do not reweigh the evidence and we defer to the court's assessment of the minor's credibility. Mother's argument is therefore unpersuasive.

In any event, the same evidence discussed *ante* regarding stepfather's physical abuse supports the court's removal of the minor from mother. Mother and stepfather are married, live together, and at the time of disposition they had two children together. There is no indication in the record that mother would consider separating from stepfather in order to protect the minor from him. Mother's repeated denial that any physical abuse occurred provides further support for the court's removal order. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; see also *In re M.R.* (2017) 8 Cal.App.5th 101, 109 [parent's minimization of problematic conduct calls into question parent's general judgment]; cf., *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 286 [removal order reversed where parents had expressed remorse for prior physical abuse, engaged in treatment, and had changed

their attitude about corporal punishment].) Although mother had completed a parent education class, had enrolled in an anger management program, and was scheduled to begin individual counseling by the time of the disposition hearing, it was well within the court's discretion to conclude she had not yet made sufficient progress to lessen the danger to the minor.

## DISPOSITION

The adjudication and removal orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.