Filed 7/1/24  In re E.N. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.N. et al., Persons Coming Under the Juvenile Court Law. | B332435  c/w B333367 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP05572A-D) |
| Plaintiff and Respondent, | |
| v. | |
| JOSE N., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed in part, conditionally affirmed in part, and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

Father appeals from the orders denying his petitions under Welfare and Institutions Code section 388[1] and terminating parental rights to L.L. (minor).[2]  Father contends the court abused its discretion when it summarily denied his section 388 petitions, and it erred in denying application of the parental relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(i).  Father also contends that the court erroneously failed to ensure that the Los Angeles County Department of Children and Family Services (Department) complied with requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).  We affirm.

The parties are familiar with the facts and procedural history, and our opinion does not meet the criteria for publication.  (Cal. Rules of Court, rule 8.1105(c).)  We therefore resolve this appeal by memorandum opinion pursuant to Standard 8.1 of the Standards of Judicial Administration and consistent with constitutional principles (Cal. Const., art. VI, § 14 ["Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated"]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1263, fn. omitted [three-paragraph discussion of issue on appeal satisfies

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On October 6, 2023, this court consolidated father's two appeals—the June 7, 2023 appeal of the orders summarily denying father's section 388 petitions and the July 17, 2023 appeal of the order terminating parental rights.

constitutional requirement because "an opinion is not a brief in reply to counsel's arguments.  [Citation.]  In order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

## DISCUSSION

### A.     Father's Section 388 Petitions

Father contends the court's September 14, 2023 summary denial of his section 388 petitions without an evidentiary hearing was an abuse of discretion.  We disagree.

On receipt of a section 388 petition, the court may either summarily deny the petition or order a hearing.  (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.)  The court may summarily deny the petition unless the petitioner makes a prima facie showing in his or her favor.  (*Ibid.*; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)  We review the summary denial of a section 388 petition for abuse of discretion.  (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.)

A petition to change or modify a juvenile court order under section 388 must factually allege that:  (1) there are changed circumstances or new evidence to justify the requested order, and (2) the requested order would serve the minors' best interests.  (*In re G.B., supra*, 227 Cal.App.4th at p. 1157; Cal. Rules of Court, rule 5.570(d)(1) & (2).)  " 'A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause.  [Citations.]  It is not made, however, if the allegations would fail to sustain a favorable decision even if they

3

were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' [Citation.] In determining whether the petition makes the required showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re K.L.* (2016) 248 Cal.App.4th 52, 61–62; see also *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 [" '[S]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required"].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The parent's interests in the care, custody, and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Nonetheless, by showing that circumstances have changed and that the best interest of the child warrants further reunification services, a parent may rebut the presumption that once family reunification services have been terminated reunification is not in the best interest of the child. (*In re Marilyn H., supra*, 5 Cal.4th at p. 309; *In re Stephanie M., supra*, at p. 317.) "[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832–833.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural

history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446–447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189.)

Here, the juvenile court did not abuse its discretion when it summarily denied the section 388 petitions father filed with respect to all four children, whose ages ranged from four to seventeen years old.  The family has a lengthy history of domestic violence, dating back to 2017, when mother and father were involved in a violent altercation.  At that time, parents had only two children, and both children were present during the altercation (the older child was ten and the younger one still an infant).  The incident led to a dependency case, which the juvenile court ended in April 2018 with an order granting mother and father custody of the two children.  From 2019 to 2021, the Department continued to receive referrals alleging ongoing domestic violence between the parents.  The referrals did not result in a new dependency proceeding until the Department filed a petition in the current case in December 2021, alleging the four children were at risk of harm based on the parents' history of engaging in domestic violence, father's physical abuse of one child, and mother and father's history of substance abuse.  The 2021 petition alleged mother was a current abuser of methamphetamine and alcohol, and father was a current abuser of alcohol.

The record includes ample evidence that the relationship between mother and father was tempestuous, with both mother and father threatening to leave, or actually leaving the relationship, only to return. At times, the parents deceived social workers about the status of their relationship. During a Department investigation in August 2021, mother denied any domestic violence or drug use; however, father reported mother was using methamphetamine and alcohol daily in the children's presence and was arrested for physically assaulting him. By December 2022, mother and father had reconciled. While father had been compliant with his court-ordered services, mother had not, and father began missing visits with the children. By Easter in 2023, tensions were again rising between the two, although they reconciled again in the same month, April 2023. As maternal grandmother, the children's caregiver, explained, parents always fought, broke up, and got back together.

In its six-month review report in August 2022, the Department recommended six additional months of reunification services, based on father's compliance with services. In May 2023, the Department recommended terminating services. Mother had missed ten drug tests, and while father was participating in services, his on-again, off-again relationship with mother meant he had not demonstrated a willingness to keep the children safe. The court terminated reunification services on May 18, 2023.

Just four months later, on September 13, 2023, father filed four section 388 petitions, one for each child, seeking to have his reunification services reinstated or the children placed with him. Describing what circumstances had changed since termination of reunification services, father's petitions stated that the court had

6

terminated services "due to father continuing to remain in a relationship with mother, and cohabitate with her. Since [then], father has reportedly moved away from mother and has ended his relationship with her. He now resides in a separate home and is able to receive the children into his custody without mother." Father attached a one-year lease agreement beginning September 2023, a September 2023 letter from a service provider stating he had continued participating in the program, and documentation showing his participation in drug testing and substance abuse programs prior to the May 2023 termination of services.

Father's petitions did not present a prima facie case of changed circumstances, because the record demonstrated that parents had an ongoing, repeated pattern of separating and reconciling, and nothing in the petitions showed that this time would be any different. Father filed his petitions just two weeks after the lease took effect, and nothing in the lease precluded mother and father from reconciling once again, this time with mother moving into father's new apartment. Father's history of saying he was fed up with mother's drug use, only to return to the relationship, works against him here, and he has not made a prima facie case of changed circumstances.

Even assuming father met the changed circumstances requirement by getting a separate apartment, father did not make a prima facie case that his requested relief would be in the children's best interests. The petitions simply alleged the children had a bond with father and would benefit from continuing the relationship. On appeal, father's only argument is that the best interest question should be viewed in the context of the denial of father's section 388 petitions leading directly to the

termination of his parental rights, and that such a termination would necessarily cause trauma to the children.  This conclusory argument does not provide any factual basis to support that reinstating reunification services would be in the children's best interests.  The record supported the trial court's determination that father did not make out a prima facie case:  father missed or canceled many visits and the children's behavior and their statements to social workers demonstrated that they were either uninterested in having a relationship with father, or saw their relationship only as a superficial source of snacks and fun.  Moreover, reinstating reunification services, and thereby further delaying permanency for minors, was not in their best interests.

Having failed to establish a prima facie case of either changed circumstances or best interests, father was not entitled to an evidentiary hearing on his section 388 petitions.

## B.    Parental Relationship Exception

Father contends the juvenile court erred when it determined that the parental relationship exception to adoption did not apply.  However, taking the applicable law and the standard of review into account, father has failed to demonstrate reversible error.

Once the juvenile court finds it is likely the child will be adopted, section 366.26, subdivision (c)(1), requires termination of parental rights unless a statutory exception applies.  "The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption."  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)  In order to establish the parental relationship exception

under section 366.26, subdivision (c)(1)(B)(i), a parent must prove three elements:  (1) "regular visitation and contact with the child, taking into account the extent of visitation permitted"; (2) that "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) that terminating the parent-child attachment "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home."  (*In re Caden C.* (2021) 11 Cal.5th 614, 636.)

The substantial evidence standard of review applies to the first two elements of the parental relationship exception (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640), while the third element—"whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion."  (*Id.* at p. 640.)

Recognizing that the eldest child is close to 18 years old and does not want to spend time with him, father focuses his appellate argument on his three younger children.  He contends that his visits with the children "should be considered consistent enough" to meet the first requirement of *Caden C., supra*, 11 Cal.5th at pages 629 and 630, and that there was evidence of a beneficial relationship between himself and his children.

Father's argument misconstrues the operation of the substantial evidence standard of review.  The appealing party "bear[s] the burden to show there was no evidence of a sufficiently substantial nature to support those findings and orders.  [Citation.]  We draw all reasonable inferences from the evidence to support the findings and orders of the juvenile court

9

and review the record in the light most favorable to the court's determinations; we do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the trial court's findings.  [Citation.]  Thus, we do not consider whether there is evidence from which the juvenile court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*In re M.R.* (2017) 8 Cal.App.5th 101, 108.)  While father points to specific pieces of evidence that would support a finding in his favor, he does not argue and has not established that the evidence mandates a reversal of the trial court's determination that the parental relationship exception does not apply.  He also has not demonstrated that the court abused its discretion in determining that the benefits of adoption outweighed any potential detriment associated with the termination of parental rights.

## C.    ICWA

Father contends the Department failed to meet its initial ICWA inquiry duties because it did not interview certain relatives about possible Indian ancestry.  The record demonstrates that the Department asked mother, father, maternal grandparents, a maternal uncle, and paternal grandmother about Indian ancestry, and all denied any Indian ancestry.  Although the Department also spoke with two paternal aunts, it did not ask them about possible Indian ancestry.

According to father, the Department failed to comply with its continuing duty to interview extended family members regarding ICWA despite having contact with several maternal

10

and paternal family members, and others who were identified but whose contact information was not provided. The Department contends that because mother, father, maternal grandparents, and paternal grandmother all denied any Indian ancestry, there is substantial evidence to support the juvenile court's determination that ICWA does not apply.

State law imposes on the Department a first-step inquiry duty to "interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "[e]xtended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) The duty of initial inquiry includes making a meaningful effort to interview available relatives. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552–553.) It does not include, however, a duty to search for all possible extended relatives. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [child protective agency is not required to conduct an extensive independent investigation or to "cast about" for investigative leads]; see also *In re H.B.* (2023) 92 Cal.App.5th 711, 721 [where "representatives from both sides of two generational levels" of minor's family denied Indian ancestry, but not every extended relative was contacted, ICWA determination supported by substantial evidence].)

We agree with father that the Department failed to comply with the inquiry requirements of ICWA and related California law when it failed to ask reasonably available relatives, including

11

the two paternal aunts with whom the Department was in contact, about possible Indian ancestry. (See *In re H.V., supra*, 75 Cal.App.5th at p 438; *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.) It therefore appears that the Department failed to fulfill its initial duty of inquiry under ICWA. We will therefore conditionally affirm and remand for further proceedings.

## DISPOSITION

The juvenile court's September 14, 2023 order denying father's petitions under Welfare and Institutions Code section 388 are affirmed. The juvenile court's November 16, 2023 order terminating parental rights under Welfare and Institutions Code section 366.26 is conditionally affirmed and remanded for proceedings required by this opinion. The court shall order the Department to make reasonable efforts to (1) interview all available extended family members about the possibility of the child's Indian ancestry, including those extended family members that the Department had previous contact with, namely, the paternal aunts A.N. and S.C.; and (2) report on the results of those efforts. Nothing in this disposition precludes the court from ordering the Department to make inquiry of the additional family members identified in the record or others who may have an interest in the children. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court

shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.


MOOR, Acting, P. J.


We concur:


KIM, J.


LEE, J.*


---

* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.