Filed 8/4/25  In re N.O. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re N.O. a Person Coming Under the Juvenile Court Law. | B340207<br><br>(Los Angeles County  Super. Ct. Nos.  23CCJP02780,  23CCJP02780A ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent.<br>        v.<br>L.O.,<br><br>        Defendant and  Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Lori N. Siegel, under appointment by the Court of Appeal.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

---

## MEMORANDUM OPINION[1]

Father L.O. asserts that the juvenile court had insufficient evidence to assert jurisdiction over his then-one-year-old daughter, N., under sections 300, subdivision (b) and 342. He further contends the court erred in ordering N. removed from his care pursuant to section 361, subdivision (c). We find no error and affirm.

## BACKGROUND

Eight months into the family's open dependency case related to domestic violence, the court returned one-year-old N. to father's physical custody at the recommendation of the Los Angeles County Department of Children and Family Services (DCFS). Six weeks later, father and N. were involved in a single-car collision with the center divider on the 10 freeway. First responders arrived on the scene at 1:30 a.m. and found father in the driver's seat, unconscious and smelling of alcohol. The car was damaged, and the airbags were deployed. N. was securely strapped into her car seat and was uninjured. Father was

---

[1] We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the full factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

transported to the hospital, where he regained consciousness. Police performed a blood draw and arrested father for driving under the influence and child endangerment; he was later charged with these offenses in a misdemeanor complaint.

When father spoke to DCFS the day after the incident, he denied drinking any alcohol. He stated that he and N. had been at a family gathering for Memorial Day, and someone gave him a soda in which he did not taste any alcohol. At the time of the collision, he was driving home; he denied doing so recklessly, as a bystander had reported. He did not remember what happened but said he was "tired from having such a long day and believes he might have fallen asleep."

DCFS subsequently filed the section 342 petition at issue, which alleged a single count under section 300, subdivision (b)(1): "On 05/28/2024, . . . father . . . placed the child in a detrimental and endangering situation in that the father drove a vehicle, with the child as a passenger, recklessly on a freeway, including father's vehicle striking a center divider and coming to a complete stop on the freeway. The father was found unconscious and smelled of alcohol. Such a detrimental and endangering situation established by the father endangers the child's physical health and safety and places the child at risk of serious physical harm, damage and danger."

In an ensuing jurisdiction/disposition report and last-minute information, DCFS reported a second interview with father, approximately one month after the collision. At that time, father stated that he had consumed "like three" servings of punch at the Memorial Day party and "did not know if someone spiked the punch." He "felt tired only," otherwise "fine," and no one at the party told him he looked impaired or should not drive.

Father reported that he had enrolled in services including an outpatient substance use disorder program, a 12-step program, counseling, and toxicology testing; since the incident, he had three negative test results and two missed tests.

Paternal grandmother told DCFS there had been no alcohol at the party unless someone sneaked it in, father did not appear to be under the influence that day, and father "seemed fine" but "may have been tired" when he left the party. Paternal grandmother denied speaking to mother about the party or having a conflict with father. However, mother reported that paternal grandmother called mother on the night of the party and said she "got into it" with father when he refused to leave N. overnight because he had been drinking. Mother also reported that father "does not drink much, but when he drinks, he drinks too much, he cannot control it," and is "very destructive when he gets frustrated." Paternal grandmother, mother, N.'s foster caregiver, and father's family preservation services provider all reported that father had been overwhelmed recently. N.'s caregiver also reported that N. was "different," more "quiet" and "clingy," when she returned to the caregiver's care after the incident.

The juvenile court sustained the petition, citing the "objective signs of being under the influence" and father's inability to "control the car appropriately" while transporting N. The court stated that father "should not have been drinking" any beverages he knew contained alcohol, "considering he was going to be driving the child." The court found that although father was "on the road to recovery," and would likely "think twice at least before he goes to a party and starts drinking anything that he's not aware of what's in it," "under the circumstances, to keep

the child safe," it was necessary to sustain the petition. At disposition, the court removed N. from father and returned her to mother. It found that father "still poses a significant substantial risk to the child" and was not "in a position" to transport N. to the daycare and therapy programs she was attending to address her "challenges managing her emotions."

We grant DCFS's unopposed request and take judicial notice that the case was subsequently transferred to San Bernardino County over father's objection. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

## DISCUSSION

Jurisdiction under section 300, subdivision (b)(1)(A) is appropriate when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." (See also § 342, subd. (b) ["Unless otherwise provided by law, all procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."].) Similarly, removal under section 361, subdivision (c)(1) is appropriate when a court finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

We review a juvenile court's jurisdictional and dispositional orders for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773; see also *In re V.L.* (2020) 54 Cal.App.5th 147, 154 ["A

5

juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence."].) We view the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Because issues of fact and credibility are the province of the trial court, we do not reweigh the evidence or exercise independent judgment; instead, we determine if a reasonable trier of fact could find that the order is appropriate. (*Ibid.*) With respect to the removal finding, which must be supported by clear and convincing evidence, we consider whether the "record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

Father has not met that burden as to either the jurisdictional finding or the disposition order. With respect to the jurisdictional finding, father first maintains that he "did not knowingly consume alcohol" and discounts mother's statements about his drinking. We do not reweigh the trial court's credibility determinations to the contrary. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Moreover, father's ongoing refusal or inability to recognize his poor judgment in transporting N. while intoxicated or, as he alternatively suggested, so drowsy he fell asleep while driving, poses a risk of harm to N. "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) Father points out that "[n]o one told Father he looked

6

unwell to drive," but it is father's responsibility as N.'s caregiver to assess his own fitness to transport or care for N., and to make necessary arrangements if he is unable to do so. To the extent others did assess his ability to care for N., they unanimously reported that father was "overwhelmed" and "crying out for help." The juvenile court was not required to "wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)

Father also points to his enrollment and re-enrollment in services, and his development of a safety plan. However, father's prompt participation in services, while commendable, was nascent, and he remained in denial about the objective signs of intoxication observed during the incident. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision."].) Additionally, the court was permitted to treat father's missed toxicology tests as positive ones (see *L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1036), and the safety plan does not address alcohol, substances, or the transport of N. The juvenile court reasonably could infer from this record that father's sobriety remained fragile, particularly given the numerous reports that he was overwhelmed, and that jurisdiction over N. was necessary.

Father's final argument relating to jurisdiction is that the incident was an isolated one, akin to those in *In re J.N.* (2010) 181 Cal.App.4th 1010 (*J.N.*) and *In re Gilberto G.* (2024) 105 Cal.App.5th 52 (*Gilberto G.*), that did not create or demonstrate a future risk of harm to N. We disagree. Unlike either of those cases, which both involved single incidents of intoxicated parents

7

transporting children—*J.N.* in a minivan, *Gilberto G.* on a public bus—N. was the subject of an open dependency case when this incident occurred. As DCFS argues, the crash "was yet another example of father exercising incredibly poor judgment and putting his child at substantial risk of suffering serious physical harm." Moreover, father "continued to minimize the seriousness of the incident during the dependency proceedings" (*In re M.R.* (2017) 8 Cal.App.5th 101, 107), notwithstanding his enrollment in services prior to the jurisdictional hearing. There was also evidence that N. had regressed while in his care. These facts set the case apart from *J.N.*, where "there was no evidence, and there were no factual allegations, that either parent's parenting skills, general judgment, or understanding of the risks of inappropriate alcohol use is so materially deficient that the parent is unable 'to adequately supervise or protect' the children." (*J.N.*, *supra*, 181 Cal.App.4th at p. 1026.) Father's circumstances also set them apart from *Gilberto G.*, in which the mother did not drive the children, there was minimal evidence relating to a prior sustained petition from several years earlier, and mother had six months of sobriety and cooperation between the filing of the petition and the hearing. (See *Gilberto G.*, *supra*, 105 Cal.App.5th at p. 65.)

"In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances." (*J.N.*, *supra*, 181 Cal.App.4th at p. 1026.) "The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending on present circumstances." (*Ibid.*) Here, the record reflects that the juvenile court engaged in this careful

consideration. Substantial evidence supports the jurisdictional order.

Father also challenges the sufficiency of the evidence supporting the removal of N. at disposition. He contends there was no evidence that N. would be at substantial risk of harm if returned to him, or that there were no reasonable means to protect N. without removal. Father largely makes the same arguments he made with respect to jurisdiction: the collision was an isolated incident; N. was not harmed in the collision; father took responsibility for the incident, enrolled in services, and prepared a safety plan; father agreed not to drive N. and had transportation and childcare lined up for her; and his unmonitored family time with N. after the incident was positive.

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.) Jurisdictional findings are prima facie evidence that a child cannot remain safely in the home. (*Ibid.*; § 361, subd. (c)(1).) "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous, and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

Here, the substantial evidence supporting jurisdiction also supports the order removing N. from father's custody. The court reasonably could find that N. remained at risk because father did

not accept responsibility for the incident.  The evidence also supports the court's conclusion that father was unable to reliably transport N. to her current daycare and therapy programs, and that she was likely to face detriment if her attendance at those programs was interrupted.  Based on these facts and the others described above, we conclude the court's finding of substantial danger to the child if left in father's custody is supported by substantial evidence, and we accordingly affirm the removal order.

## DISPOSITION

The jurisdictional finding and dispositional order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, ACTING P. J.

We concur:

MORI, J.

TAMZARIAN, J.